[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-14836
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-00813-CV-VMC

RICHARD HAMILTON,

Plaintiff-Appellant,

versus

SECRETARY, DOC,
FLORIDA ATTORNEY GENERAL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(December 15, 2010)**

Before CARNES, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

The issue in this 28 U.S.C. § 2254 capital case is whether the doctrines of equitable estoppel and judicial estoppel operate to lift the petitioner's claims over the statute of limitations bar contained in 28 U.S.C. § 2244(d).[1]  In an earlier opinion we remanded the case to the district court with a request that it conduct an evidentiary hearing and answer nine questions we posed, so that we could then decide the legal issues.  See Hamilton v. Sec'y, Dep't of Corrs., 325 Fed. Appx. 832 (2009) (unpublished).

On remand, the district court did exactly as we had requested; after conducting an evidentiary hearing, the court answered all of our questions, for which we are grateful.  A copy of the district court's order is attached as Appendix A to this opinion.

I.

In its order responding to our nine questions, the district court chronicled the events leading up to the December 14, 2000 hearing in state court.  As the district court pointed out, petitioner Richard Hamilton's conviction and sentence became

_____

[1]We granted a certificate of appealability only on the issues of equitable tolling and equitable estoppel, but we intended it to include the related issue of judicial estoppel, so the parties briefed and orally argued that issue as well.  Hamilton v. Sec'y, Dep't of Corrs., 325 Fed. Appx. 832, 833 (2009) (unpublished).  After the district court on remand entered its findings answering our questions, however, the petitioner did not raise, address, or even mention the issue of equitable tolling in his supplemental brief to us, so we will not consider it.  See DeYoung v. Schofield, 609 F.3d 1260, 1282 n.21 (11th Cir. 2010).

2

final when the Supreme Court denied his petition for writ of certiorari on June 26, 1998, ending his direct appeal. The Office of Capital Collateral Regional Counsel had stated that it would not represent Hamilton in his state post-conviction proceedings, so the state court chose attorneys from the Attorney Registry to represent him. During his state post-conviction proceedings, four attorneys were appointed to represent Hamilton, one after the other.[2] The first attorney was appointed on November 18, 1998, and the last one was appointed about three months later on February 18, 1999. That fourth and final attorney in the state court proceedings was Charles E. Lykes, Jr. He represented Hamilton at the December 14, 2000 hearing in state court where the events that frame the issues in this appeal took place.

On June 14, 1999, just a couple of weeks before Hamilton's one-year deadline for filing a federal habeas petition, see 28 U.S.C. § 2244(d), Lykes moved for a sixty-day extension of time to file Hamilton's motion for post-conviction relief in state court, and the State did not object to that extension. The state court granted the requested extension, which gave Hamilton until August 13, 1999 to file his motion. Lykes later sought and received two more extensions, and on

---

[2]The record does not indicate and the district court could not determine why the first three of those attorneys were relieved of the representation.

November 8, 1999, he finally filed a four-page motion for post-conviction relief.

David A. Davis, the attorney who had represented Hamilton in his direct appeal, wrote a letter to the state court judge on March 24, 2000, expressing his concern about the motion that Lykes had filed. Davis feared that Lykes' actions or inaction not only might have waived issues in state court but also might have "'precluded [Hamilton] from raising any claims in federal court.'" Appx. A at 8. Hamilton also wrote a letter to the state court judge complaining about Lykes.

Five days later during a status conference Lykes asked for another sixty days in order to file an amended motion for post-conviction relief. The State did not object to the extension, and Lykes filed that amended motion on June 28, 2000. Meanwhile, Hamilton wrote letters to the judge continuing to express his concerns about Lykes' performance, and Lykes asked the judge to schedule a status conference so that Hamilton's concerns could be addressed.

On September 25, 2000, Hamilton filed a pro se "Motion to Dismiss Incompetent/Ineffective Post Conviction Counsel and Strike Original/Amended Post Conviction Motion and Appoint Qualified Post Conviction Counsel." About a month later, Lykes filed a motion asking the court to address Hamilton's concerns at a status conference. About a month after that, the State requested a hearing. The state court held a hearing on December 14, 2000, and the district

4

court's order details what happened during that hearing.

By the time that state court hearing was held Hamilton's June 28, 1999 deadline for filing a federal habeas petition had long since passed. <u>See</u> 28 U.S.C. § 2244(d); <u>see also</u> <u>Thompson v. Sec'y, Dep't of Corrs.</u>, 595 F.3d 1233, 1235 (11th Cir. 2010) ("The AEDPA mandates a one-year statute of limitations for filing a federal habeas corpus petition.").

## II.

This is where the district court's fact findings in response to our specific questions come in. Those careful findings were entered after a full evidentiary hearing on the matter, and none of them are clearly erroneous. <u>See</u> <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512 (1985); <u>Carmichael v. Kellogg, Brown & Root Services, Inc.</u>, 572 F.3d 1271, 1279–80 (11th Cir. 2009); <u>EEOC v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1285–86 (11th Cir. 2000); <u>United States v. Walcott</u>, 972 F.2d 323, 325 (11th Cir. 1992) ("The constituent elements of estoppel constitute questions of fact . . . and will be accepted as interpreted by the district court unless its findings were clearly erroneous.") (quotation marks and alterations omitted). For our purposes, the district court's findings are the facts.

The district court found that at the December 14, 2000 hearing in state court

both attorneys for the State represented—one expressly and the other implicitly—that the § 2244(d) statute of limitations deadline had not passed as of that time. Appx. A at 21–22. The court also found, however, that both of the attorneys representing the State, like Lykes who was representing Hamilton, genuinely believed that the limitations period had not passed. Id. at 23 & n.8, 24–25. They were mistaken. Neither intended to mislead Lykes or the state court. See id. at 24.

There was conflicting testimony about whether either attorney for the State ever represented to Hamilton or to his attorney that the State would not assert the § 2244(d) statute of limitations as a defense when the case reached federal court. Appx. A at 22. Lykes testified that sometime before the December 14, 2000 hearing one or both of the attorneys for the State had told him that the State would not assert the § 2244(d) limitations bar in federal court. However, both of those attorneys testified that they had not done that. The district court resolved that conflict in the testimony by finding that Lykes was under the mistaken impression that either or both of the attorneys for the State had told him that when in fact neither one had. See id. at 22–23.[3]

_____

[3]The court credited the testimony of the two attorneys for the State over that of Lykes. In doing so, the court took into consideration: Lykes' lack of memory about the details of the alleged conversation; the established policy of the state attorney general's office not to waive any time-bar defense in federal court; the fact that none of the attorneys at the hearing informed

6

The district court also found that neither Hamilton nor Lykes relied on the inadvertent misstatements that the attorneys for the State made at the hearing about the § 2244(d) deadline not having passed. Id. at 25–26. The deadline had, after all, passed eighteen months before those statements were made, so they could not have contributed in any way to any inaction until after it was already too late. Id.

If Lykes had known that the § 2244(d) limitations period had already run, he might have moved to withdraw as counsel for Hamilton in the state court proceeding.[4] Id. at 25–26. The only benefit the State conceivably received from the mistaken statements of its attorneys at the hearing is avoiding any further delay that would have occurred if Lykes had been allowed to withdraw or had been removed from representing Hamilton. Id. at 27. But there is no assurance that the state court would have allowed Lykes to withdraw or would have removed him,

---

the state court of any agreement that the § 2244(d) time-bar would not be asserted in federal court, even though that time-bar was repeatedly discussed at the hearing; and the fact that both attorneys for the State had stated at the hearing that while they were waiving the timeliness issue as a defense in the state court proceedings, there was no way to predict whether a petition filed in federal court would be deemed timely. See id. at 22–23.

[4]Lykes testified before the district court that if he had not moved to withdraw, he would have filed an action in federal court seeking a declaratory judgment on the limitations issue. Id. at 27. The district court believed that would have been a futile effort because it would have amounted to a request for an advisory opinion. See, e.g., Nat'l Adver. Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005). Even if it did not, there is nothing Lykes could have done with a federal court judgment declaring that it was too late for him to file a federal habeas petition.

7

anyway.  Id. at 28.

In fact, the district court found that that such a request by Lykes or motion by Hamilton probably would have been denied in view of the delay that had already occurred, and even if Lykes had been replaced with new counsel there is no reason to believe that the state court proceeding would have ended any differently—that it would have resulted in relief from Hamilton's sentence or conviction.  Id. at 26–28.  Regardless of who had been Hamilton's attorney from that point on in the state court proceedings, nothing could have been done about the already-expired § 2244(d) limitations period.  Id.; see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period.  A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

Putting it all together, the state court found that because the misstatements by the attorneys for the State at the December 14, 2000 hearing in state court "were not made with the intent to deceive the parties or the state court," Appx. A at 29, there was no fraud on the court.  Id. at 30.  The attorneys did not act in bad faith, Hamilton suffered no prejudice, and there was no miscarriage of justice.  Id. at 31; see Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002)

("Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.") (alteration and quotation marks omitted). The district court recognized that "[w]hen considering a party's intent for the purpose of judicial estoppel, we require 'intentional contradictions, not simple error or inadvertence.'" Id. at 29 (quoting Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010) (quoting Am. Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1536 (11th Cir.1983))). Here there were none.

## III.

In light of the district court's findings about the statements made by the State attorneys during the December 14, 2000 hearing in state court, neither equitable estoppel nor judicial estoppel operates to lift the § 2244(d) statute of limitations bar. Because the misstatements of the attorneys for the State were made without knowledge that they were false, were not made with the intent to mislead, and were not made in bad faith, equitable estoppel does not apply. See United States v. McCorkle, 321 F.3d 1292, 1297 (11th Cir. 2003) (holding that in order to apply equitable estoppel against the government, affirmative misconduct must be shown, and "[a]ffirmative misconduct requires more than governmental negligence or inaction"). Nor does judicial estoppel. See Robinson, 595 F.3d at 1275 ("When

9

considering a party's intent for the purpose of judicial estoppel, we require intentional contradictions, not simple error or inadvertence.") (quotation marks omitted); see also Burnes, 291 F.3d at 1286 ("intentional contradictions, not simple error or inadvertence" required for judicial estoppel). There is also the fact that Hamilton has failed to establish that he detrimentally relied on the statements, which were made eighteen months after the deadline for filing his federal habeas petition had already passed. See Lyng v. Payne, 476 U.S. 926, 935, 106 S.Ct. 2333, 2339 (1986) ("An essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations . . . ."); Sw. Marine, Inc. v. Gizoni, 502 U.S. 81, 92 n.5, 112 S.Ct. 486, 494 n.5 (1991) (rejecting an equitable estoppel argument because "the critical element of detrimental reliance does not appear").

The district court's decision denying Hamilton's petition for a writ of habeas corpus is AFFIRMED.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD HAMILTON,

               Petitioner,

vs.                           Case No. 3:05-cv-813-J-34TEM

WALTER A. MCNEIL, et al.,

               Respondents.

_____

## ORDER

### I. Status

Petitioner Richard Hamilton[1] initiated this case on August 26, 2005, by filing a Petition Under 28 U.S.C. § 2254 by a Person in Custody Pursuant to a State Court Judgment (Petition) (Doc. #1). On July 7, 2008, the Court dismissed this case with prejudice, finding that the Petition was untimely filed pursuant to 28 U.S.C. § 2244(d) (providing that a one-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court). Specifically, the Court found:

> Petitioner's conviction became final on June 26, 1998, when the United States Supreme Court denied his petition for writ of certiorari. This was after the April 24, 1996, effective date of the Antiterrorism and

---

[1] Petitioner Richard Hamilton is an inmate confined within the custody of the Florida Department of Corrections under a 1995 sentence of death.

Effective Death Penalty Act of 1996 (hereinafter AEDPA). Therefore, Petitioner had one year from the date his case became final to file the federal petition. Petitioner should have filed this action on or before June 28, 1999. The Petition, filed in this Court on August 26, 2005, would be untimely unless Petitioner could avail himself of one of the statutory provisions which extends or tolls the time period.

Petitioner did not file any applications for post-conviction relief in state court until November 9, 1999, when he filed a motion for post-conviction relief in the Hamilton County Circuit Court. Ex. 9. This motion for post-conviction relief did not toll the one-year limitation period because it had already expired on June 28, 1999. See Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 (11th Cir. 2008) (finding that an application for post-conviction relief filed in state court after the expiration of the federal one-year limitation period cannot toll that period if the period has already expired). Thus, this action was not timely filed within the one-year period of limitation.

Order (Doc. #47), filed July 7, 2008, at 4-5 (footnote omitted). The Court rejected Petitioner's arguments that the Respondents should be estopped from asserting a statute of limitations defense and that equitable tolling is appropriate based upon statements made by representatives of the State and a circuit judge at a December 14, 2000 hearing in state court.

Petitioner appealed, and the Eleventh Circuit Court of Appeals granted a certificate of appealability with respect to the following issue: "Do the statements that the attorneys for the State made at the December 14, 2000 hearing in state court bar the

2

district court from applying the 28 U.S.C. § 2244(d) statute of limitations, either because of the doctrine of equitable estoppel or equitable tolling?" Eleventh Circuit Court of Appeals' October 2, 2008 Order (Doc. #57) at 1.

On April 29, 2009, the Eleventh Circuit issued an additional order, which states in pertinent part the following:

> We granted a certificate of appealability in this 28 U.S.C. § 2254 case on the issue of whether statements that attorneys for the State made at the December 14, 2000 hearing in state court bar the district court from applying the 28 U.S.C. § 2244(d) statute of limitations, either because of the doctrine of equitable estoppel or equitable tolling. We intended to include within that issue the related one of whether the doctrine of judicial estoppel applies to bar application of the § 2244(d) statute of limitations, and the parties have briefed and argued it as well.
>
> After considering the briefs and the relevant parts of the record, and hearing oral argument, we have concluded that our decisional process in this case would be aided by further findings by the district court. For that reason, we are remanding this case to the district court for the limited purpose of having it enter findings on the following factual questions:
>
> > 1) Did either or both of the attorneys who appeared for the State of Florida at the December 14, 2000 hearing in state court represent to the petitioner or to the state court that the statute of limitations contained in 28 U.S.C. § 2244(d) had not run?
> >
> > 2) Did either or both of the attorneys who appeared for the State

3

at the December 14, 2000 hearing in state court represent to the petitioner or to the state court that the State would not assert as a defense the statute of limitations contained in 28 U.S.C. § 2244(d) when the case got to federal court?

3) If the answer to either question 1 or 2, above, is "yes," what was the motive or purpose of the attorney or attorneys in making the misstatement(s) or misrepresentation(s)?

4) If the answer to question 1, above, is "yes," was the misstatement(s) or misrepresentation(s) based on inadvertence or mistake or were they made in bad faith with knowledge that they were not wrong?

5) If the answer to question 2, above, is "yes," was the misstatement(s) or misrepresentation(s) based on inadvertence or mistake or were they made in bad faith with the expectation that the State would invoke the statute of limitations defense when the case got to federal court?

6) If the answer to either question 1 or 2, above, is "yes," did the petitioner rely on the misstatement(s) or representation(s) to his actual detriment or prejudice? If so, how?

7) If the answer to either question 1 or 2, above, is "yes," did the misstatement(s) or representation(s) benefit the State or prejudice the petitioner? If so, how?

4

8) If the answer to either question 1 or 2, above, is "yes," would the outcome of the December 14, 2000 hearing have been different if the misstatement(s) or misrepresentation(s) had not been made?

9) Did any of the conduct or statements of the attorneys for the State at the December 14, 2000 hearing in state court, combined with the State's later conduct in these federal habeas proceedings result in fraud on the court or threaten a mockery or miscarriage of justice? (We realize that this question, and some of the others to a lesser extent, may go beyond pure fact finding, but it is intertwined with factual questions and we would appreciate the district court's views on it.)

The questions we have posed are not meant to be exclusive. The district court is free to explore and address any other factual matters that may be relevant to the application of the equitable doctrines that might arguably apply in this case. We leave to the district court the mechanics of deciding the factual matters, although an evidentiary hearing should be conducted to explore the knowledge, intent, and motive of the attorneys for the State at the December 14, 2000 hearing in state court. After the district court has made the necessary findings, it should transmit a copy of them along with a transcript of the evidentiary hearing and any other relevant documents to this Court.

Eleventh Circuit Court of Appeals' April 29, 2009 Order (Doc. #61)

at 2-4.

5

On October 20, 2009, the undersigned conducted an evidentiary hearing. Petitioner's Post-Hearing Brief (Petitioner's Brief) (Doc. #92) was filed on January 19, 2010. Respondents' Post-Evidentiary [Hearing] Memorandum of Law (Respondents' Brief) (Doc. #95) was filed on February 19, 2010. Thus, the issues before this Court are ripe for review.

## II. Findings of Fact and Conclusions of Law

At some point after Petitioner's conviction became final, the Office of Capital Collateral Regional Counsel - North informed the Hamilton County Circuit Court that it would not be representing Petitioner Hamilton in his post conviction proceedings and that it would be necessary to appoint counsel from the Attorney Registry. Respondents' App.[2] 7. Therefore, on November 18, 1998, the circuit court appointed Gary L. Printy, Esquire, to represent Petitioner. Id.

For reasons that are not apparent on the face of the record, the circuit court appointed R. Glenn Arnold, Esquire, to represent Petitioner on December 21, 1998. Petitioner's App. 4.[3] Additionally, at some point prior to December 30, 1998, the circuit court appointed Robert A. Norgard, Esquire, to represent

---

[2] The Court refers to the exhibits appended to Respondents' Exhibit List for Respondents' Motion to Dismiss, filed July 17, 2007, as "Respondents' App."

[3] The Court refers to the exhibits in the Appendix to Petitioner's Response to Motion to Dismiss, filed March 25, 2008, as "Petitioner's App."

6

Petitioner, again for reasons that are not apparent on the face of the record before this Court. P.E.[4] 1. On December 30, 1998, Mr. Norgard filed a motion to withdraw as counsel. Id. The circuit court granted this motion on February 18, 1999, and appointed Charles E. Lykes, Jr., Esquire, to represent Petitioner in his state post conviction proceedings. P.E. 2. Mr. Lykes filed a notice of appearance in Petitioner's case on or about March 18, 1999. P.E. 3.

On or about June 14, 1999, Mr. Lykes filed a motion for a sixty-day extension of time in which to file Petitioner's motion for post conviction relief, and in support of this request alleged that: (1) he had requested Petitioner's files on March 31, 1999; (2) the first records were received in mid-May, 1999, and the final records were received on May 28, 1999; (3) the records consisted of 7,780 pages; (4) Petitioner's motion for post conviction relief was due for mailing on or before June 29, 1999; and (5) counsel had numerous other commitments. P.E. 4. On or about June 22, 1999, the State filed a response to the motion, stating it did not object to the requested extension of time. P.E. 6. On June 21, 1999, the state court granted the motion and gave Petitioner until August 13, 1999, to file his motion for post conviction relief. P.E. 7 at 1.

---

[4] The Court refers to the Petitioner's Exhibits admitted at the October 20, 2009 evidentiary hearing as "P.E."

7

On or about June 23, 1999, Mr. Lykes filed an amended motion for extension of time, requesting a ninety-day extension. P.E. 5. On July 7, 1999, the judge granted the amended motion for extension of time and directed Petitioner to file his motion for post conviction relief within ninety days from the date of the order, making the due date October 5, 1999. P.E. 7 at 2.

Mr. Lykes filed a final motion for extension of time to file Petitioner's motion for post conviction relief on or about October 4, 1999. P.E. 8 at 2-5. In a letter accompanying the motion, he informed the judge that the State had no objection to the request. Id. at 1. The judge granted the motion for extension of time and directed Petitioner to file his motion for post conviction relief on or before November 5, 1999. P.E. 9. Mr. Lykes filed a four-page motion for post conviction relief on November 8, 1999. P.E. 10.

On March 24, 2000, the attorney who had represented Petitioner on direct appeal, David A. Davis, Esquire, wrote a letter to the judge, expressing his concern about the four-page motion that Mr. Lykes filed. P.E. 12. He also noted that "Mr. Lykes' inattention to Mr. Hamilton's case may have waived issues not only in state court, but have precluded him from raising any claims in federal court." Id. at 1. The Petitioner also wrote a letter to the judge complaining about the performance of Mr. Lykes. P.E. 11.

On March 29, 2000, the judge held a status conference, at which Mr. Lykes stated that he had spoken with Mr. Davis, and as a result, he desired an additional sixty days in which to file an amended motion for post conviction relief. P.E. 13 at 3. The State did not object to the requested extension. Id. Still concerned about the status of his case, on April 24, 2000, Petitioner wrote a letter to the judge, asking the judge to respond to the letters he and Mr. Davis had sent regarding Mr. Lykes' representation. P.E. 15. Thereafter, on May 1, 2000, the judge entered an order giving Petitioner sixty days in which to file an amended motion, see P.E. 14, and Mr. Lykes filed an amended motion for post conviction relief on June 28, 2000, see Respondents' App. 9 at 7-28. In a letter accompanying the judge's courtesy copy of the amended motion, Mr. Lykes asked the judge to schedule a status conference to give Petitioner an opportunity to address his complaints. P.E. 17. Thereafter, Petitioner wrote several more letters to the judge, expressing his concerns about Mr. Lykes' performance. P.E. 18; P.E. 21; P.E. 22.

On September 25, 2000, Petitioner filed a pro se Motion to Dismiss Incompetent/Ineffective Post Conviction Counsel and Strike Original/Amended Post Conviction Motion and Appoint Qualified Post Conviction Counsel. P.E. 24. In response, on or about October 28, 2000, Mr. Lykes filed a motion, in which he requested that the court address Petitioner's concerns at an upcoming status

conference. P.E. 25. Then, on or about December 4, 2000, the State filed a Motion for Hearing, requesting the judge to schedule a _Huff_ hearing[5] on Petitioner's second amended motion for post conviction relief[6] and address Petitioner's concerns regarding Mr. Lykes' representation at that hearing. P.E. 26.

On December 14, 2000, the judge held a hearing, at which the court and counsel addressed Petitioner's concerns regarding timeliness and Mr. Lykes' performance. P.E. 28. Assistant Attorneys General Barbara Yates and George Dekle appeared on behalf of the State at this hearing. When the judge asked what the State's position was with respect to the federal timeliness issue, Ms. Yates responded, in pertinent part, as follows:

> Your Honor will find in Hamilton's file a pro se motion to dismiss incompetent ineffective postconviction counsel received in my office on September 21 of this year. In this, Mr. Hamilton makes the claim that Mr. Lykes has, he theorizes, waived his federal rights under the AEDPA, the anti-terrorism effective death penalty act of 1996 that was passed by Congress. It provides a one year time limit on the filing of habeas corpus

---

[5] _Huff v. State_, 622 So.2d 982, 983 (Fla. 1993) (per curiam) (finding that, due to the severity of punishment at issue in a death penalty case, a circuit judge must hold a hearing on an initial motion for post conviction relief for the purpose of determining whether an evidentiary hearing is required and to hear legal argument relating to the motion).

[6] At some point between October 28, 2000, and December 4, 2000, Mr. Lykes filed a second amended motion for post conviction relief. _See_ P.E. 25 at 2-3; Respondents' App. 9 at 30-55; P.E. 26 at 1.

petitions in federal court after a case is final in the state courts.

Mr. Hamilton's concerns about his counsel's performance needs [sic] to be addressed; however, the state has one further thing to say about the AEDPA in section 2244 paragraph D of USCA. The state will not make any timeliness objections in the state courts on this case. The state will not object to the second amended motion. In fact, the state has responded to that motion in writing. However, whatever may happen in the federal court, there is no one in this room, and, frankly, there is no one in this state who can say what a federal court is going to do when this case gets there because we simply do not know how a federal judge will count on that one year period.

The State of Florida in actuality activated this case in October of 1998, when the attorney general's office filed the required notices under 3.852 to start the public records procedure. Mr. Hamilton's case was denied certiorari in the United States Supreme Court on I believe June 26, 1998[,] which would have begun his year running in federal court.

My Lykes detailed the problems with his appointment. He is in fact the third Registry Counsel who was appointed to this case. CCR dumped both Mr. Hamilton and his codefendant, Mr. Wainwright, which put them into the registry. Mr. Lykes came to the Court and asked for an extension of time, which was granted. He asked for another extension of time that was granted as well. He eventually filed a 3.850 and asked for permission to amend it and did so and now we have another amended motion.

As I said before, the State of Florida is not going to make any kind of timeliness objection in state court in this case.

Id. at 8-10.

11

Thereafter, the judge noted that Mr. Lykes had acted in a timely fashion and advocated Petitioner's position to the best of his ability. Id. at 16. At this point, the following colloquy ensued:

> THE DEFENDANT: So there has been no waiver of remedy in my case, state or federal?
>
> THE COURT: State agreed?
>
> MR. DEKLE: No waiver in state court. In federal court, God knows what the federal people do.
>
> THE DEFENDANT: I am not concerned about what they do. I am concerned about if I am going to have a chance to get there. That's the concern. . . .

Id. at 18. Ms. Yates responded, in pertinent part, as follows: "I understand Mr. Hamilton's concern about where do I go from here and what can I do in the courts. As I said before, the State of Florida is going to make no objection on timeliness or that anything has been done improperly in the state system." Id. at 19-20. She then stated that, after Petitioner completed his proceedings in state court, he would "be expected to go into federal court. We have no control over what the federal courts are going to do." Id. at 20. Thereafter, the parties stated the following:

> MS YATES: We don't know how they are going to look at this. There are cases where federal district judges are sitting down with a calendar and counting off day by day what is going on. As far as the state is concerned, you are timely in this state. You will receive all of the due process that we can

12

provide. The state is not interested in keeping anyone on death row who should not be there. However, no one can say what is going to happen with the federal stuff until we get to federal court. We just don't know.

MR DEKLE: Like I said, I don't know much about federal court, but here is how it appears to me. You have got one year after your proceedings end in state court. We're saying you were timely filed in state court. So the one year provision in federal court don't [sic] start running until the state court proceedings are concluded. Now, you know, the federal judge may not interpret it that way, but that's the way it looks to me.

MR. LYKES: My possession [sic] is a federal judge would have to interpret it that way, because there is even in the statute that the one year doesn't start if there is a state proceeding.

THE COURT: Mr. Hamilton is going to get his state rights.

Id. at 20-21.

At this point, the Petitioner expressed his concern about the one-year federal limitations period again. Id. at 21-22. The judge stated, "It has been resolved." Id. at 22. The Petitioner replied, "If you say so, that's good enough for me." Id. The Court responded, "It is on the record. Can't be reversed." Id. The Petitioner then stated, "But the state remedy, you know, it was my rights in federal court, Your Honor, that was my concern." Id. The judge replied, "You still got them." Id. At this point, Ms. Yates stated that, pursuant to Artuz v. Bennett, 531 U.S. 4

13

(2000),[7] Petitioner's motion for post conviction relief was properly filed "as far as the State of Florida is concerned." Id. at 22-23.

Later during the hearing, the judge gave Mr. Lykes an additional thirty days in which to file any additional amendments to the second amended motion for post conviction relief. Id. at 28. Thereafter, the judge said, "Then the state has on the record no procedural bar has been waived in state court and no time limits. You have your full time. What's the next issue?" Id. Neither Ms. Yates nor Mr. Dekle said anything further about the limitations issue during the remainder of the hearing. Id. at 28-30.

At the evidentiary hearing before the undersigned, Mr. Lykes testified that he had discussions with Ms. Yates about extensions of time prior to the December 14, 2000 hearing. Transcript of Evidentiary Hearing (Tr.) (Doc. #87), filed November 25, 2009, at 49-50. Specifically, he testified, "And I'm not -- I'm not sure to what extent we talked about federal versus State extensions until December, but in December it was my understanding that there would not be any objection to federal filing after [the state proceedings

---

[7] In Artuz, 531 U.S. at 8, the United States Supreme Court found that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."

were] over, based on timeliness, as long as I didn't waste time." Id. at 50.

When Ms. Yates said at the December 14, 2000 hearing that "whatever may happen in the federal court, there is no one in this room, and, frankly, there is no one in this state who can say what a federal court is going to do when this case gets there because we simply do not know how a federal judge will count on that one year period," P.E. 28 at 9, Mr. Lykes did not interpret this statement as a representation that the State would raise the federal statute of limitations issue. Tr. at 53. The statements made by Ms. Yates and Mr. Dekle at the December 14, 2000 hearing did not lead Mr. Lykes to believe that the State would pursue an untimeliness defense in federal court. Instead, their statements reinforced his impression that the State would not assert such a defense in federal court; however, the federal court might raise the issue sua sponte. Id. at 53-64, 70.

When Mr. Lykes learned that the State had filed a motion to dismiss in this Court based on untimeliness, Mr. Lykes was surprised. Id. at 66. He testified, "my understanding was that the State would not object, but couldn't promise me that a federal judge would not look at it and say, you know, I don't think you've been timely here and I'm not allowing you to stipulate to my jurisdiction." Id.

On cross-examination, Mr. Lykes admitted that he never "put this claimed off-the-record discussion at which the State agreed to

15

waive an affirmative defense on the record[.]" Id. at 70. When the undersigned asked Mr. Lykes if he recalled what Ms. Yates said with respect to alleged waiver of the statute of limitations defense, Mr. Lykes responded, "my recollection is that there would not be a timeliness objection in federal court, which is what comes out in the record of that hearing. I don't recall exactly what words were used and what words were spoken, but I know that's one of the concerns that I shared with her, especially after it became an issue in the December hearing." Id. at 82-83.

The undersigned also asked Mr Lykes if he ever discussed with Ms. Yates whether the State would raise a timeliness issue in federal court, and Mr. Lykes responded, "my understanding from talking with her, [was] that they considered that I was timely with everything. And so that told me that there would not be a timeliness objection, because my understanding was that their position was that I was timely with everything." Id. at 83.

Mr. Lykes testified that he would have taken the following action at the December 14, 2000 hearing if he had known that the federal limitations period had already expired:

> I would have done a big mea culpa. I would
> have asked to withdraw. Or I might have -- I
> might have now that I, you know, remember
> more, I might have gone ahead and gone to
> federal court to try to get some kind of
> declaratory judgment or something right at the
> time, because I wanted that issue to be
> finally resolved at the end of that hearing,
> at least as much as we could before we
> proceeded, because I didn't want it

16

> interfering with my working with him and
> preparing his case anymore.

Id. at 48.

Ms. Yates also testified at the evidentiary hearing before the undersigned. She remembered speaking with Mr. Lykes on the telephone sometime before the December 2000 hearing and conversing with Mr. Lykes and Mr. Dekle in the courtroom before the judge came to the bench at the December 2000 hearing. Id. at 105. However, they did not have any off-the-record discussions about whether or not the State intended to waive any time bar defense in federal court. Id. at 167. Indeed, she did not recall having any discussions with Mr. Lykes about the federal time limit and whether the limitations defense would be asserted in federal court. Id. at 177. She testified that, to her knowledge, waiving a time-bar defense in federal court would not have been in keeping with the policy of the Office of the Attorney General. Id. at 167. However, she and Mr. Dekle agreed that they would not "make any time limits objection to Mr. Lykes producing a motion for State post conviction relief" because they did not want the case to be delayed further in state court. Id. at 109.

When Ms. Yates said at the December 14, 2000 hearing that "whatever may happen in the federal court, there is no one in this room, and, frankly, there is no one in this state who can say what a federal court is going to do when this case gets there because we simply do not know how a federal judge will count on that one year

17

period," P.E. 28 at 9, she "especially meant that [she] did not know how." Tr. at 125. She "had no idea what the federal courts would do" with respect to the calculation of the one-year limitations period. Id. Moreover, she did not conduct any research prior to the December 14, 2000 hearing to determine when the federal limitations period would run. Id. at 169.

As far as Ms. Yates knew at the time of the December 14, 2000 hearing, "things were okay in the federal court." Id. at 162. Therefore, when the judge said that the Petitioner still had his federal rights, she did not correct his misstatement because she agreed with what the judge said. Id. However, she did not actually "know what the timing would be." Id.

Ms. Yates "only intended to and [she] only did waive timeliness objections as to the State court proceedings." Id. at 164. If the judge had specifically asked whether the State would be willing to waive a timeliness defense in federal court, Ms. Yates thinks that she would have refused to waive such a defense. Id. at 173.

If she had known, at the time of the December 14, 2000 hearing, that the federal limitations period had already expired, she would have so informed the parties and the court. Id. at 165. None of the statements she made during the December 14, 2000 hearing regarding timeliness were made with the intent to deceive the Petitioner or his attorney. Id. at 166.

18

Mr. Dekle also testified at the evidentiary hearing before the undersigned. At the time of the December 14, 2000 hearing, Mr. Dekle did not know that the federal one-year limitations period had already expired. Id. at 148. His knowledge of federal habeas corpus law at the time was "minuscule" and limited to what he had learned in law school about the exhaustion of remedies in state court. Id. If he had known that the federal one-year limitations period had expired, he would have so informed the state court. Id.

At the time of the December 14, 2000 hearing, Mr. Dekle believed that Mr. Lykes had acted in a timely fashion. Id. at 141. Additionally, as far as he knew, Petitioner had not forfeited any federal rights at the time of the December 2000 hearing. Id. at 144.

As noted previously, during the December 14, 2000 hearing, Mr. Dekle stated that Petitioner had one year from the date his proceedings ended in state court to file his federal habeas petition. See P.E. 28 at 21. At the evidentiary hearing, Mr. Dekle testified that he could not recall exactly what he was thinking when he made that statement; however he thought that he probably intended to reassure the Petitioner. Tr. at 143. Moreover, in stating that Mr. Lykes acted in a timely manner and defended Petitioner's rights, Mr. Dekle intended to reassure Petitioner that his federal rights were preserved. Id. at 151.

19

On cross-examination, counsel for Respondent asked Mr. Dekle if he intended to mislead Petitioner as to whether the federal time limitations had expired. Id. at 146. Mr. Dekle responded:

> No sir. And I think with every statement I made, I either prefaced it or concluded it with a caveat that I could be wrong. Whenever talking to people about legal issues -- I was a public defender for a number of years -- and I never stated a categorical statement that this is going to happen when you get to court. I was always very careful to couch it as here's what I think, but I could be wrong, and that was the way I was trying to couch my statements at that hearing.

Id. At no point in his representation of the State at the December 14, 2000 hearing did he knowingly misrepresent the status of the law. Id. at 151.

If he thought that Mr. Lykes' representation of Petitioner was "anything less than competent," Mr. Dekle "would have been among the first to say" that Petitioner's motion to discharge counsel should be granted and substitute counsel should be appointed. Id. at 147. He did not care who represented the Petitioner, he just wanted the case to be disposed of as expeditiously as possible, "with due regard for safeguarding the rights of the [Petitioner]." Id. at 142. If Mr. Lykes had been replaced at that juncture, it would have delayed the proceedings. Id.

Mr. Dekle was sure that he, Ms. Yates and Mr. Lykes spoke before the hearing on December 14, 2000; however, he could not recall exactly what was discussed. Id. at 149. He recalled that Mr. Lykes stated that the federal limitations period had not

20

expired. <u>Id</u>. Based upon what Mr. Lykes said and Mr. Dekle's limited knowledge of federal habeas corpus law, Mr. Dekle mistakenly thought that the Petitioner's concerns about timeliness and Mr. Lykes' representation were groundless. <u>Id</u>. at 153.

Mr. Dekle never told Mr. Lykes that the State would not assert a timeliness defense in federal court, and Ms. Yates never made any such representation to Mr. Lykes in Mr. Dekle's presence. <u>Id</u>. at 149-50. Additionally, Ms. Yates never told Mr. Dekle about any conversation she had with Mr. Lykes, during which she represented that the State would waive a time bar defense in federal court. <u>Id</u>. at 150.

## A. The First Question

> Did either or both of the attorneys who appeared for the State of Florida at the December 14, 2000 hearing in state court represent to the petitioner or to the state court that the statute of limitations contained in 28 U.S.C. § 2244(d) had not run?

The Court finds that the answer to the first question must be "yes." Specifically, the Court finds that Mr. Dekle represented to the Petitioner and the state court that the statute of limitations contained in 28 U.S.C. § 2244(d) had not run when he made the following statement:

> Like I said, I don't know much about federal court, but here is how it appears to me. You have got one year after your proceedings end in state court. We're saying you were timely filed in state court. So the one year provision in federal court don't [sic] start running until the state court

21

> proceedings are concluded. Now, you know, the federal judge may not interpret it that way, but that's the way it looks to me.

P.E. 28 at 21. Additionally, the Court finds that while Ms. Yates did not expressly represent to Petitioner or the court during the December 14, 2000 hearing that the statute of limitations contained in 28 U.S.C. § 2244(d) had not run, because she thought it had not run, she did not dispute the judge's statement that Petitioner still had his right to file in federal court. Thus, her failure to dispute the judge's statement could be interpreted as a tacit representation that the federal limitations period had not run.

## B. The Second Question

> Did either or both of the attorneys who appeared for the State at the December 14, 2000 hearing in state court represent to the petitioner or to the state court that the State would not assert as a defense the statute of limitations contained in 28 U.S.C. § 2244(d) when the case got to federal court?

The Court finds that the second question must be answered in the negative. Although Mr. Lykes was under the mistaken impression that Ms. Yates and/or Mr. Dekle had agreed at some point prior to the December 14, 2000 hearing that the State would not assert the statute of limitations defense contained in 28 U.S.C. § 2244(d) in federal court, neither Ms. Yates nor Mr. Dekle told Mr. Lykes that the State would not assert such a defense in federal court. The Court makes this finding based upon the following factors: (1) the

22

credible testimony of Ms. Yates[8] and Mr. Dekle that no such representation was made; (2) Mr. Lykes could not remember any specific details about the alleged agreement and repeatedly testified that he was only under the impression that there was such an agreement; (3) it appears that waiving a time-bar defense in federal court would not have been in keeping with the policy of the Office of the Attorney General; and (4) none of the attorneys at the December 14, 2000 hearing informed the court of such an agreement even though the status of the federal one-year statute of limitations was repeatedly discussed at that hearing.

Additionally, at the December 14, 2000 hearing, neither Ms. Yates nor Mr. Dekle represented that the State would not assert a statute of limitations defense in federal court. In fact, both Ms. Yates and Mr. Dekle repeatedly stated that they were waiving the timeliness issue only in state court and there was no way to predict if a federal petition would be deemed timely.

---

[8] Petitioner submits many arguments in support of his assertion that the testimony of Ms. Yates was not credible. See Petitioner's Brief at 27-38. The Court finds these arguments to be unavailing for the reasons stated by the Respondents. See Respondents' Brief at 38-47. The Court finds the testimony of all three witnesses at the evidentiary hearing to be credible; however, the Court finds that Mr. Lykes was under the mistaken impression that the State would not assert the statute of limitations defense in federal court. Perhaps Mr. Lykes was under this mistaken impression because Ms. Yates and Mr. Dekle had agreed to waive any timeliness objections in state court and all three attorneys mistakenly believed that the federal limitations period had not run as of the date of the December 14, 2000 hearing.

23

## C.  The Third Question

> If the answer to either question 1 or 2, above, is "yes," what was the motive or purpose of the attorney or attorneys in making the misstatement(s) or misrepresentation(s)?

The Court finds that neither Ms. Yates nor Mr. Dekle intended to make any misstatements regarding the statute of limitations contained in 28 U.S.C. § 2244(d).  Instead, at the time of the December 14, 2000 hearing, both attorneys were under the mistaken impression that the limitations period had not run.

When Mr. Dekle stated that he thought the one year limitations period did not begin to run until the state court proceedings concluded, he intended to reassure Petitioner that his concerns about Mr. Lykes' representation were groundless because his federal rights were preserved.  Ms. Yates failed to dispute the judge's statement that Petitioner still had his right to file in federal court because she thought the statement was correct.

## D.  The Fourth Question

> If the answer to question 1, above, is "yes," was the misstatement(s) or misrepresentation(s) based on inadvertence or mistake or were they made in bad faith with knowledge that they were not wrong?

The Court finds that any misstatements or misrepresentations made by Ms. Yates and Mr. Dekle regarding the statute of limitations contained in 28 U.S.C. § 2244(d) were based on inadvertence or mistake.  As this Court previously found, neither Ms. Yates nor Mr. Dekle intended to make any misstatements

24

regarding the statute of limitations contained in 28 U.S.C. §
2244(d). Instead, at the time of the December 14, 2000 hearing,
both attorneys were under the mistaken impression that the
limitations period had not run.

### E. The Fifth Question

> If the answer to question 2, above, is
> "yes," was the misstatement(s) or
> misrepresentation(s) based on inadvertence or
> mistake or were they made in bad faith with
> the expectation that the State would invoke
> the statute of limitations defense when the
> case got to federal court?

This question is inapplicable because the Court has found the
answer to the second question to be "no."

### F. The Sixth Question

> If the answer to either question 1 or 2,
> above, is "yes," did the petitioner rely on
> the misstatement(s) or representation(s) to
> his actual detriment or prejudice? If so,
> how?

The Court finds that this sixth question must be answered in
the negative. Petitioner did not rely upon any misstatements
regarding the federal limitations period to his actual detriment.
Indeed, the federal limitations period expired almost eighteen
months before the December 14, 2000 hearing. Thus, he did not miss
the federal deadline based on his reliance upon any misstatements
made at that hearing regarding the federal limitations period.

Moreover, if the parties and the state court had been informed
that the federal one-year limitations period had run, Mr. Lykes

25

stated that he may have moved to withdraw. There is no evidence that such a request would have been granted. Indeed, it likely that the court would have denied such a request because Mr. Lykes was the fourth registry attorney appointed to represent the Petitioner in his post conviction proceedings and those proceedings had been delayed for over a year.

Even assuming Mr. Lykes would have been permitted to withdraw, the result would have been further delay in prosecuting Petitioner's post conviction proceedings. Moreover, no evidence was presented to show that any substitute counsel would have litigated Petitioner's case in state court with better success.[9] Moreover, and perhaps most importantly, no substitute counsel could have done anything to resurrect the federal limitations period because it had already expired. See Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.) (per curiam) (finding that even properly filed state-court petitions must be pending in order to toll the limitations period, and that a state court petition that is filed "following the expiration of the limitations period cannot toll

---

[9] As noted by Respondents, Mr. Lykes raised seventeen claims in Petitioner's post conviction proceedings, and the circuit court held an evidentiary hearing on five of those claims before denying relief. Mr. Lykes appealed the circuit court's order denying relief and also filed a petition for writ of habeas corpus in the Florida Supreme Court, in which he raised seven additional claims. See Respondents' Brief at 54; Hamilton v. State, 875 So.2d 586 (Fla. 2004) (per curiam) (upholding the circuit court's order denying post conviction relief and denying Petitioner's petition for writ of habeas corpus).

that period because there is no period remaining to be tolled"), cert. denied, 531 U.S. 991 (2000).

If Mr. Lykes did not move to withdraw, he testified that he would have filed an action in federal court, seeking declaratory judgment regarding the limitations issue. However, this Court has repeatedly refused to give advisory opinions on the calculation of the federal limitations period. Instead, this Court instructs such a movant that he or she must actually file a petition in this Court before any determination regarding the timeliness of the petition will be made. Thus, such an action would have been futile.

## G. The Seventh Question

> If the answer to either question 1 or 2, above, is "yes," did the misstatement(s) or representation(s) benefit the State or prejudice the petitioner? If so, how?

The Court finds that any misstatements or representations made by Ms. Yates and Mr. Dekle regarding the statute of limitations contained in 28 U.S.C. § 2244(d) benefitted the State only to the extent that the post conviction proceedings were not delayed further because Mr. Lykes did not move to withdraw. The Court finds that Petitioner was not prejudiced for the reasons stated in the answer to the sixth question.

## H. The Eighth Question

> If the answer to either question 1 or 2, above, is "yes," would the outcome of the December 14, 2000 hearing have been different if the misstatement(s) or misrepresentation(s) had not been made?

27

This Court is unable to ascertain whether the outcome of the December 14, 2000 hearing would have been different if Ms. Yates and Mr. Dekle had not mistakenly represented that the federal limitations period had not run. As stated above, it appears that if the parties and the state court had been advised that the federal limitations period had run, Mr. Lykes probably would have moved to withdraw. This Court is of the view that it is likely such a motion would have been denied given the posture of the case; however, it is not possible to conclusively determine whether such a motion would have been granted or denied.

## I. The Ninth Question

> Did any of the conduct or statements of the attorneys for the State at the December 14, 2000 hearing in state court, combined with the State's later conduct in these federal habeas proceedings result in fraud on the court or threaten a mockery or miscarriage of justice? (We realize that this question, and some of the others to a lesser extent, may go beyond pure fact finding, but it is intertwined with factual questions and we would appreciate the district court's views on it.)

This Court answers this ninth question in the negative. Neither the conduct nor statements of the attorneys for the State at the December 14, 2000 hearing in state court, either alone or combined with the State's later conduct in these federal habeas proceedings, have resulted in fraud on the court or threatened a mockery or miscarriage of justice. The Eleventh Circuit has stated

28

that, "[w]hen considering a party's intent for the purpose of judicial estoppel, we require 'intentional contradictions, not simple error or inadvertence.'" Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010) (quoting Am. Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1536 (11th Cir. 1983)). Indeed, "[w]hen considering a party's motive and intent and whether it justifies applying judicial estoppel, we require that the intent be 'cold manipulation and not an unthinking or confused blunder . . . .'" Ajaka v. Brooksamerica Mortg. Corp., 453 F.3d 1339, 1345 n.7 (11th Cir. 2006) (quoting Johnson Serv. Co. v. Transamerica Ins. Co., 485 F.2d 164, 175 (5th Cir. 1973)).

Here, Ms. Yates and Mr. Dekle inadvertently made representations that the one-year federal limitations period had not expired. Even if Mr. Dekle's uninformed misstatement (that the federal limitations period did not begin to run until the state post conviction proceedings concluded) could be considered a "confused blunder," that is insufficient to warrant the application of judicial estoppel.

Moreover, any misrepresentations regarding the calculation of federal limitations period were not made with the intent to deceive the parties or the state court and were not "calculated to make a mockery of the judicial system." Robinson, 595 F.3d at 1273) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002)). In fact, both Ms. Yates and Mr. Dekle qualified these

representations by repeatedly stating that there was no way to predict how the federal one-year limitations period would be calculated when Petitioner filed his habeas petition in federal court.

Although Ms. Yates and Mr. Dekle mistakenly thought that the one-year federal limitations period had not expired as of the date of the December 14, 2000 hearing, they never waived or agreed to waive any timeliness defense in federal court. Thus, there has not been any "'calculated assertion' of divergent positions" in this case. Ajaka, 453 F.3d at 1345 n.7 (quoting Am. Nat'l Bank of Jacksonville, 710 F.2d at 1536)). Instead, any misrepresentation regarding the one-year federal limitations period was based upon inadvertence or mistake. See New Hampshire v. Maine, 532 U.S. 742, 753 (2001) ("We do not question that it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'") (quoting John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 29 (4th Cir. 1995)).

In the absence of any intent to deceive, there has been no fraud upon the Court. See Davenport Recycling Assocs. v. C.I.R., 220 F.3d 1255, 1262 (11th Cir. 2000) (finding that fraud upon the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision). Here,

30

there was no unconscionable plan or scheme designed to improperly influence any court in its decision.

Finally, this Court has found that the attorneys for the State did not act in bad faith and there is no evidence that any mistaken representations regarding the calculation of the federal limitations period prejudiced the Petitioner. Thus, this Court is of the opinion that there has been no miscarriage of justice in these circumstances.

Since the Eleventh Circuit remanded this case for these very limited proceedings and retained jurisdiction, the Clerk of Court will be directed to send a copy of this Order and the other pertinent documents to the Eleventh Circuit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Clerk shall immediately transmit a copy of this Order, the transcript of the evidentiary hearing, the case file and all appendices to the Eleventh Circuit Court of Appeals.

2. The Clerk shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of August, 2010.

MARCIA MORALES HOWARD
United States District Judge

31

ps 8/4
c:
Counsel of Record
USCA